O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TABITHA METCALF,** | NO. EDCV 08-00851-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| | AND ORDER |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed a Complaint on July 3, 2008, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI").  On December 8, 2008, the parties consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation on April 17, 2009, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case to the Commissioner for a new administrative hearing; and defendant asks that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff, who was born on May 21, 1986, filed her application for SSI on January 30, 2006, alleging an inability to work since June 1, 2005, due to panic attacks, depression, and a disorder of the left knee. (Administrative Record ("A.R.") 13, 95.) She has no past relevant work experience. (A.R. 17, 89-90.)

The Commissioner denied plaintiff's claim for benefits initially and upon reconsideration. (A.R. 52-56, 58-63.) On December 10, 2007, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Lowell Fortune ("ALJ"). (A.R. 19-49.) On January 31, 2008, the ALJ denied plaintiff's claims (A.R. 9-18), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 2-4).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since January 30, 2006, the date on which plaintiff filed her application for SSI. (A.R. 11.) The ALJ further found that plaintiff has the following "severe" impairments: a left knee disorder[1]; an anxiety disorder, not otherwise specified; and a depressive disorder, not otherwise specified. (*Id.*)

The ALJ determined that plaintiff has the residual functional

---

[1] Plaintiff's left knee disorder was not addressed by the parties.

capacity ("RFC") to perform light work. (A.R. 12.) Specifically, the ALJ found that

> [plaintiff] can lift and/or carry 10 pounds frequently and 20 pounds occasionally. Out of an 8-hour period, she can stand and/or walk for 4 hours and sit for 6 hours. She can occasionally climb stairs and ramps but cannot climb ladders, ropes or scaffolds. Nor can she walk on uneven terrain. Balancing, bending, and stooping can be done frequently. She can occasionally crouch and less than occasionally kneel. Mentally, [plaintiff] cannot perform safety operations, be responsible for the safety of others, or perform work requiring hypervigilence.

(*Id.*)

Based on the ALJ's RFC assessment and the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (A.R. 17.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since January 30, 2006, the date the application was filed. (A.R. 18.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495

F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins

v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges four issues: (1) whether the ALJ considered plaintiff's treating psychiatrist's opinion properly; (2) whether the ALJ considered the State Agency psychiatrist's opinion properly; (3) whether the ALJ considered the type, dosage, and side effects of plaintiff's prescribed medications properly; and (4) whether the ALJ posed a complete hypothetical question to the vocational expert. (Joint Stipulation ("Joint Stip.") at 2.)

**I.  The ALJ Properly Rejected The Opinion Of Plaintiff's Treating Psychiatrist.**

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988.) However, an ALJ is not obligated to defer in all instances to that opinion. When, for example, an examining physician sets forth an opinion based upon "independent clinical findings that differ from those of the treating physician," then the examining doctor's opinion may constitute substantial evidence upon which the ALJ may properly rely. Andrews, 53 F.3d at 1041; *see also* Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001) (examining doctor's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant). If there are two opinions, both of which constitute

substantial evidence, then it is solely within the province of the ALJ to resolve the conflict.  *Id.*; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Controverted opinions of treating physicians may be rejected by providing specific, legitimate reasons based on substantial evidence.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Plaintiff contends that the ALJ erroneously rejected the "opinion" of plaintiff's treating psychiatrist, Samuel E. Dey, M.D., that, at her initial appointment, plaintiff "was not able to establish good eye contact, . . . [her] thoughts were few and far between, . . . [and] she exhibited marked thought blocking and poverty of thought." (Joint Stip. at 3.)  Plaintiff further contends that the ALJ erroneously rejected the Global Assessment of Functioning ("GAF") score of 50 assigned by Dr. Dey at the initial appointment.  (*Id.*)  For the reasons detailed below, plaintiff's contentions lack merit.

As an initial matter, the Court is not convinced that Dr. Dey's report -- that plaintiff "was not able to establish good eye contact [and her] thoughts were few and far between" -- constitute a proper "medical opinion" within the meaning of the Social Security Regulations. (A.R. 215.)  Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  These statements can be more appropriately characterized as Dr. Dey's observations made during

6

plaintiff's initial mental status evaluation, rather than Dr. Dey's medical judgment regarding the nature and severity of plaintiff's mental impairment(s). Moreover, these observations were made during plaintiff's first appointment with Dr. Dey and, thus, in no way reflect Dr. Dey's opinion regarding plaintiff's medical condition following her course of treatment with him and under his supervision. Such observations are not entitled to the great weight to which a treating physician's opinion would ordinarily be entitled.

By way of background, plaintiff treated with Dr. Dey from June 27, 2005, through July 11, 2006. (A.R. 199-215.) In an initial mental status evaluation performed on June 27, 2005, Dr. Dey diagnosed plaintiff with bipolar disorder, depression, and panic attacks, and assigned plaintiff a GAF score of 50.[2] (A.R. 215.) Dr. Dey reported that plaintiff

> presented as a well developed, well nourished adult who appeared in no acute physical distress. She was moderately anxious but not agitated. She was neatly dressed and fairly groomed. She was not able to establish good eye contact. Her speech was sparse, clear, audible, understandable and not pressured. Thoughts were few and far between, relevant and coherent, and verbalized in a halting manner. She exhibited marked thought blocking and poverty of thought. There was no

---

[2] A GAF of 41 to 50 involves "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000) ("DSM-IV").

>     evidence of a florid thought disorder. [Plaintiff] denied
>     experiencing hallucinations, or having a plan to harm herself
>     or others.

(*Id.*)

Nearly 11 months into her treatment with Dr. Dey, on May 8, 2006, plaintiff underwent a consultative psychiatric evaluation by Reynaldo Abejuela, M.D. (A.R. 173-79.) Dr. Abejuela interviewed plaintiff and performed a complete mental status evaluation. (*Id.*) He opined that plaintiff's psychiatric limitations and occupational and social functioning impairments were "none to mild." Dr. Abejuela further opined that plaintiff was emotionally stable and her psychiatric prognosis is "fair to good."[3] (A.R. 178-79.) Dr. Abejuela diagnosed plaintiff with panic disorder, by history vs. depressive disorder, not

---

[3] Specifically, Dr. Abejuela opined in a Medical Source Statement as follows:

1. There is no mental restriction in [plaintiff's] daily activities.
2. There are mild mental difficulties in maintaining social functioning.
3. [Plaintiff's] concentration, persistence, and pace are mildly impaired.
4. There are no repeated episodes of emotional deterioration in work-like situations.
5. [Plaintiff's] ability to understand, carry out, and remember simple instructions is not impaired.
6. [Plaintiff's] ability to understand, carry out, and remember complex instructions is mildly impaired.
7. [Plaintiff's] response to co-workers and supervisors, and the public is mildly impaired.
8. [Plaintiff's] ability to respond appropriately to usual work situations is mildly impaired.
9. [Plaintiff's] ability to deal with changes in a routine work setting is mildly impaired and does not preclude function.

(A.R. 178.)

otherwise specified.  (A.R. 176.)  Objective findings in the mental status examination revealed some mild depression and mild anxiety. (A.R. 178.)  Plaintiff's reasoning and comprehension were intact and commensurate with plaintiff's twelfth grade education, and plaintiff's cognitive functioning was within normal limits.  (*Id*.)  Plaintiff was logical and coherent.  (A.R. 175.)  At the time of the evaluation, plaintiff was not taking any psychotropic medication.[4]  (A.R. 179.)

On January 6, 2007, nearly five months after the last appointment with Dr. Dey reflected in the Administrative Record, plaintiff underwent a second consultative psychiatric evaluation, this time with Romualdo Rodriguez, M.D.  (A.R. 230-37.)  Like Dr. Abejuela, Dr. Rodriguez interviewed and performed a complete psychiatric evaluation of plaintiff.  (*Id*.)  Dr. Rodriguez diagnosed plaintiff with an anxiety disorder, not otherwise specified, and a depressive disorder, not otherwise specified, and assigned plaintiff a GAF score of 65.[5]  (A.R. 234.)  Dr. Rodriguez opined that plaintiff's "problems with anxiety and depression could easily be under good control with proper mental health services and she could easily recover within twelve months."  (A.R. 236.)  Dr. Rodriguez further opined that plaintiff was: "coherent and organized" in thought processes, with "no tangentiality or loosening of associations"; "alert and oriented to time, place, person and purpose";

---

[4] Plaintiff reported that she discontinued Wellbutrin after experiencing diarrhea as a side effect.  (A.R. 174.)

[5] A GAF of 61 to 70 is indicative of "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV, at 34.

9

and "of at least average intelligence." (A.R. 233.) Dr. Rodriguez concluded that plaintiff was able to understand, remember, and carry out simple one or two-step job instructions, and plaintiff could follow detailed and complex instructions. (A.R. 236.) Dr. Rodriguez found plaintiff to be only slightly limited in her ability to: relate and interact with supervisors, co-workers, and the public; maintain concentration and attention, persistence, and pace; associate with day-to-day work activity, including attendance and safety; adapt to the stresses common in a normal work environment; maintain regular attendance in the work place and perform activities on a consistent basis; and perform work activities without special or additional supervision. (*Id.*)

In his written decision, the ALJ set forth specific and legitimate reasons, as discussed below, for rejecting the "opinion" of Dr. Dey that is at issue here. The ALJ was entitled to rely instead, as he did, on the opinions of Drs. Abejuela and Rodriguez as substantial evidence, because both opinions were based on separate clinical findings and independent mental status evaluations of plaintiff, and both opinions were consistent with the record as a whole.

In rejecting Dr. Dey's "opinion," the ALJ properly discounted the GAF score of 50 assigned by Dr. Dey at his initial consultation with plaintiff in June 2005, because it was not indicative of a disabling mental impairment "which can be expected to result in death or which has lasted or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Rather, plaintiff's initial GAF score of 50 was merely a temporal assessment of

plaintiff's condition at or about the time she was assessed. Even if Dr. Dey's GAF score is accepted at face value, it described plaintiff's condition as of June 2005, before she started treatment with Dr. Dey, and before plaintiff filed her application for SSI benefits in January 2006.[6]

Moreover, the Commissioner has not endorsed the use of the GAF scale in the social security disability context, and the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (August 21, 2000). Therefore, the ALJ's rejection of plaintiff's initial GAF score of 50 does not constitute legal error. *See* Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

Furthermore, the ALJ properly rejected Dr. Dey's "opinion" because it was inconsistent with the record as a whole. (A.R. 15.) The ALJ correctly noted that this GAF score was inconsistent with plaintiff's actual demonstrated abilities because, when Dr. Dey rendered his "opinion" in June 2005, plaintiff had completed home schooling and received her high school diploma. (*Id.*) Moreover, the record showed

---

[6] Plaintiff is not eligible to receive SSI benefits for the period prior to February 2006, because SSI benefits are payable no earlier than the month following the month in which the application was filed. *See* 20 C.F.R. §§ 416.330, 416.335.

that plaintiff's condition had improved since Dr. Dey's June 2005 "opinion." Dr. Dey's treatment notes evidenced that, as of March 2006, plaintiff experienced only "mild anxiety, mild panic, sweaty palms, [and] dizziness." (A.R. 201-03.) Nowhere in Dr. Dey's treatment notes is there any suggestion that plaintiff's depression and anxiety prohibited her from working. The record indicates that plaintiff was encouraged to continue exploring her educational options by Phil Laney, M.F.T., who conducted therapy sessions with plaintiff under the direction of Dr. Dey. (A.R. 204.)

Finally, where, as here, there is substantial evidence -- provided by Drs. Abejuela and Rodriguez -- based on independent clinical findings that contradicts the treating physician's opinion, it is within the province of the ALJ to resolve the conflict and to accept the conclusions of non-treating physicians. Andrews, 53 F.3d at 1041; Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992)(where there is evidence to support more than one rational interpretation, the Court must defer to the decision of the ALJ). Since both Drs. Abejuela and Rodriguez performed independent clinical examinations of plaintiff, and both doctors based their opinions on these independent clinical findings, which were consistent with one another and with the record as a whole, it was proper for the ALJ to rely on their opinions that plaintiff was only mildly limited in work-related functions and to reject Dr. Dey's "opinion."

///
///
///
///

## II. The ALJ Did Not Err In His Consideration Of The State Agency Psychiatrist's Opinion.

A non-examining physician does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant, so a non-examining source opinion ordinarily carries less weight than that of an examining or treating physician. Andrews, 53 F.3d at 1040-41 (explaining that more weight is given to the opinions of treating and examining physicians because they have a greater opportunity to know and observe the patient as an individual). Standing alone, the opinion of a non-examining physician cannot constitute substantial evidence that justifies the rejection of the opinion or either an examining or treating physician. Morgan, 169 F.3d at 602. When supported by other evidence in the record, however, the opinion of a non-examining physician may serve as substantial evidence. Andrews, 53 F.3d at 1041.

Plaintiff complains that the ALJ failed to consider the opinion of the non-examining State agency psychiatrist properly, because the ALJ did not discuss each and every component of the State agency psychiatrist's opinion. (Joint Stip. at 10.) Specifically, plaintiff contends that the ALJ did not mention the State agency psychiatrist's opinion that plaintiff is "moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions and interact appropriately with the general public." (*Id.*)

In a May 2006 Mental Residual Functional Capacity Assessment form,

the State agency psychiatrist concluded that plaintiff was not limited at all or not significantly limited in 17 of 20 functional abilities listed on the form.[7] (A.R. 195-96.) The State agency psychiatrist rated plaintiff as moderately limited on her ability to: understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public. (*Id.*) In a Psychiatric Review Technique ("PRT") form completed on the same date, the State agency physician found that plaintiff had moderate functional limitations in the areas of daily living, social functioning, and in maintaining concentration, persistence, and pace. (A.R. 191.) On the PRT form, the State agency psychiatrist found no evidence of record that plaintiff has experienced episodes of decompensation. (*Id.*)

The ALJ did not err in his consideration of the non-examining State agency psychiatrist's opinion, because he properly relied on the opinions of the examining psychiatrists, Drs. Abejuela and Rodriguez, to

---

[7] The State agency psychiatrist found that plaintiff was not significantly limited in her ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) sustain an ordinary routine without special supervision; (7) work in coordination with or proximity to others without being distracted by them; (8) make simple work-related decisions; (9) complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (10) ask simple questions or request assistance; (11) accept instructions and respond appropriately to criticism from supervisors; (12) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (13) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (14) respond appropriately to changes in the work setting; (15) be aware of normal hazards and take appropriate precautions; (16) travel in unfamiliar places or use public transportation; and (17) set realistic goals or make plans independently of others. (A.R. 195-96.)

which he was entitled to give more weight. As set forth above, Dr. Abejuela specifically concluded that plaintiff's limitation in social functioning was "none to mild" and that she was only mildly impaired in her ability to understand, carry out, and remember complex instructions. (A.R. 177-78.) Similarly, Dr. Rodriguez found that plaintiff was only slightly limited in her ability to relate with supervisors, co-workers, and the public. (A.R. 236.) Dr. Rodriguez found further that plaintiff was able to understand, remember, and carry out simple job instructions, and that plaintiff was able to follow detailed and complex instructions. (*Id.*) In making his RFC determination, the ALJ carefully examined and properly weighed the opinion evidence of record, and permissibly relied on the opinions of Drs. Abejuela and Rodriguez as substantial evidence.

Even if, *assuming arguendo*, the ALJ erred in not specifically discussing every component of the non-examining State agency psychiatrist's opinion, such an error was harmless, because such consideration would not have materially impacted the ALJ's decision.[8] Put otherwise, because the ALJ's "error . . . was inconsequential to the nondisability determination," substantial Ninth Circuit precedent compels finding it to be harmless. Stout, 454 F.3d at 1054-55 (discussing Ninth Circuit cases applying harmless error doctrine in the context of Social Security claims).

Applying the harmless error standard, even if the State agency psychiatrist's opinion were credited, plaintiff would still not be found disabled, because she could perform other jobs in the national economy

---

[8] "A decision of the ALJ will not be reversed for errors that are harmless." Burch, 400 F.3d at 679.

15

that were consistent with the functional limitations found by the State Agency psychiatrist. (A.R. 17-18.) The ALJ elicited and relied on vocational expert testimony to conclude that plaintiff could perform the following unskilled jobs: electronics assembler, hand packer, information clerk, and bench assembler. (A.R. 17, 45-47.) According to Social Security Regulation 85-15, unskilled jobs require the ability to understand, carry out, and remember simple instructions, and involve dealing primarily with objects, rather than people. Thus, even if plaintiff were limited to simple, repetitive, non-public work, she would still be able to perform jobs identified by the vocational expert. *See* Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(applying harmless error to an under-inclusive hypothetical resulting in other jobs that plaintiff was able to perform).

### III. **There Is No Reversible Error With Respect To The ALJ's Consideration Of The Side Effects Of Plaintiff's Medications.**

Pursuant to SSR 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." However, an ALJ need only consider those medication side effects that have a "significant impact on an individual's ability to work." Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)(quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988), *relief modified*, 859 F.2d 1396 (1998)).

Here, plaintiff contends that the ALJ failed to consider the type, dosage, and side effects of plaintiff's medications properly. (Joint

Stip. at 14-15.)  Plaintiff, however, has not met her burden to show that the use of medications, and any side effects therefrom, had a negative effect on her ability to work.  Dr. Dey's treatment notes reveal that a "medication change (stop Wellbutrin, start Lamical[])" was discussed and that plaintiff "claimed that the Wellbutrin caused 'the same side effects' as the Lexapro."[9]  (A.R. 201.)  However, Dr. Dey's notations about plaintiff's medications say nothing about the actual medication side effects or any functional limitations resulting from the side effects of her medications.  See <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164 (9th Cir. 2001)(side effects not severe enough to impair ability to work are not relevant and may properly be omitted from hypothetical to vocational expert).  Indeed, there is no evidence in the record of any medication side effects that affected plaintiff's ability to work to a greater degree than that reflected in the ALJ's RFC assessment, and plaintiff has failed to cite any medical evidence showing that, or otherwise to explain how and to what extent, her alleged side effects caused any functional limitations.  Accordingly, the ALJ did not err in his consideration of the side effects of plaintiff's medication, nor did he err in failing to include the side effects of plaintiff's medications in the hypothetical posed to the vocational expert.

**IV.  The ALJ Posed A Complete Hypothetical Question To The Vocational Expert.**

Hypothetical questions posed to the vocational expert must

---

[9]  A review of the record reveals that plaintiff reported discontinuing Wellbutrin because it caused diarrhea and an upset stomach.  (A.R. 124, 174.)

17

accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Matthews, 10 F.3d at 681.  The ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Osenbrock, 240 F.3d at 1164-65.

For the reasons explained above, the ALJ did not err in failing to reference the "opinion" of Dr. Dey and the State Agency psychiatrist's findings, or in failing to include side effects of plaintiff's prescribed medications when posing his hypothetical questions to the vocational expert.[10]  *See* Osenbrock, 240 F.3d at 1164-65 (holding that the ALJ was free to pose a hypothetical question that failed to include the claimant's alleged impairment, because they were not supported by substantial evidence in the record); *see also* Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005)(holding that RFC determination need only include limitations the ALJ found supported by substantial evidence).

**CONCLUSION**

For all of the foregoing reasons, the Court finds that neither reversal of the ALJ's decision nor remand is warranted.  Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

---

[10]  Plaintiff also contends that her obesity should have been included in the ALJ's hypothetical to the vocational expert. (Joint Stip. at 18.)  However, plaintiff has not cited any evidence in the record which demonstrates any functional limitations resulting from her obesity.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2010

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

19